## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**SEAN AND ANZELA E., individually and
on behalf of their Minor Daughter, DE,**

       **Plaintiffs,**

**vs.**                                                                              **No. CIV 07-1191 RB/KBM**

**DAVID AND MAGGIE FRAGA, as parents
and legal guardian of LN, a minor, LN,
LAS CRUCES PUBLIC SCHOOL DISTRICT,
ZIA MIDDLE SCHOOL, DANIEL GOMEZ,
DANTE THACKER, PAULINE SANCHEZ,
DARLENE MARTINEZ, and JOHN/JANE DOES 1-5**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on the Partial Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Las Cruces Public School District (hereinafter "LCPS") and Daniel Gomez, Dante Thacker, Pauline Sanchez, and Darlene Martinez (collectively hereinafter "the School Defendants") on April 7, 2008. Jurisdiction is founded upon 28 U.S.C. § 1331. Having considered the submissions of the parties, relevant law, and being otherwise fully advised, LCPS and the School Defendants' Partial Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

### I.    Background.

The following background narrative is based on Plaintiffs' allegations, which, at this stage of the litigation, have not been substantiated. However, for purposes of analyzing LCPS and the School Defendants' Partial Motion to Dismiss, pursuant to Rule 12(b)(6), this Court must accept all of the Plaintiffs' well-pleaded allegations as true. *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

Plaintiffs Sean and Anzela E. are the parents of DE, a female child who was enrolled in special education classes at Zia Middle School, a school within the Las Cruces Public School District, when she was twelve years old.  At all times relevant to this litigation, Mr. Thacker served as the Principal of Zia Middle School; Mr. Gomez was the Assistant Principal; Ms. Sanchez served as DE's Special Education teacher, and Ms. Martinez served as a reading teacher.  Defendants David and Maggie Fraga are the parents of Defendant LN, a male child who, when he was fourteen years old, served as a student aide in the special education classes attended by DE.

Pursuant to the Individuals with Disabilities Education Act (hereinafter "IDEA"), DE's education services at Zia Middle School were furnished under an Individualized Education Plan (hereinafter "IEP").  DE's IEP included a safety plan to address concerns with her personal safety, as she was identified as being excessively trusting, lacking in self-protection skills, and failing to appreciate the consequences of her action.  Under the terms of the IEP, DE needed to be "observed at all times" and kept in the "line of sight" of an adult supervisor while on school grounds.  Plaintiffs allege that LCPS and the School Defendants failed to develop or implement policies and procedures for safeguarding special education students, including programs to screen, train, and evaluate student aides who worked with special education students.

On May 1, 2006, Plaintiffs received written notice from Ms. Sanchez that DE had allegedly lied by telling her that Defendant LN had said that he wanted DE to "have his baby."  Plaintiffs allege that Ms. Sanchez was on notice that other female students in the special education class had made similar claims and that Defendant LN considered female students in the special education class his "girlfriends."

On May 19, 2006, DE was allegedly induced by Defendant LN to come with him to a secluded room in the school during the lunch hour, at which time he allegedly physically and

sexually assaulted her.  Following the alleged incident, DE was interviewed by Mr. Gomez and Ms. Sanchez before Plaintiffs were contacted.  Mr. Thacker knew that the interview was taking placing but did not contact DE's parents.  Approximately two hours after the incident, Plaintiffs were contacted and notified that they needed to come to the school.

Plaintiff Sean E. met with Mr. Gomez at the school and was told that DE was being suspended for violating school rules that prohibit students from being outside their designated class without supervision.  Plaintiff Sean E. was not notified that DE had been sexually assaulted, even though Mr. Gomez and Ms. Sanchez allegedly had notice that inappropriate physical contact had occurred.  DE was suspended from school for two days and was not able to attend end of year activities with her class.

After DE returned home, she spoke with Plaintiffs about what had occurred when she was alone with Defendant LN.  That same day, Plaintiffs contacted the Las Cruces Police Department, and DE was examined by the staff from La Pinon SANE Unit.  Plaintiffs allege that the results of the evaluation confirmed that DE had been sexually assaulted.  DE later transferred to another school.

On October 25, 2007, Plaintiffs filed this lawsuit pleading the following causes of action against LCPS and the School Defendants:  (Count I) negligence, with a cause of action falling under the New Mexico Tort Claims Act; (Count II) deprivation of equal protection, substantive due process, and procedural due process rights secured by the constitutions of the United States and State of New Mexico, with causes of action falling under 42 U.S.C. § 1983 and claim for damages and attorney's fees under 42 U.S.C. § 1988; (Count III) denial of a free appropriate education as defined under the IDEA and denial of procedural due process under the IDEA, 20 U.S.C. § 1400 *et seq*; (Count IV) civil conspiracy; (Count V) spoliation of evidence; (Count VII) intentional infliction of

emotional distress; (Count VIII) prima facie tort.[1]

On November 21, 2007, pursuant to federal question jurisdiction, this suit was removed to federal court. On April 7, 2008, LCPS and the School Defendants filed their Partial Motion to Dismiss Counts II, III, IV, V, VII, and VIII for failure to state a claim upon which relief can be granted.  Counts I and VI and all claims against Defendant LN and Defendants David and Maggie Fraga were not addressed in LCPS and the School Defendants' Partial Motion to Dismiss.

**II.      Rule 12(b)(6) Motion to Dismiss Standard.**

A claim for relief may be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).  This Court, for purposes of analyzing a motion to dismiss, pursuant to Rule 12(b)(6), must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the Plaintiff. *David*, 101 F.3d at 1352.  The Court must also look for plausibility in the complaint; in other words, the complaint must include factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

**III.     Discussion.**

**A.  42 U.S.C. 1983 Claims.**

42 U.S.C. § 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.  To state a claim upon which relief can be granted under § 1983, a plaintiff must allege a deprivation of a federal right and that the person who deprived the plaintiff of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  However, neither the civil rights statutes nor the

---

[1]Count VI alleges various tort claims against Defendants David and Maggie Fraga and Defendant LN.

Fourteenth Amendment are a license to the federal judiciary to displace state law through the creation of a body of general federal tort law. *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (Fourteenth Amendment); *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971) (civil rights statute).

Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  The Tenth Circuit Court of Appeals has held that the degree of specificity necessary to provide fair notice under Rule 8(a)(2) depends on the type and complexity of the case. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities.  Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1249-50.  Failure to isolate the alleged unconstitutional acts of each defendant in a § 1983 case does not provide adequate notice as to the nature of the claims against each defendant and is grounds for dismissal. *Id.* at 1250.  In addition, "pleadings must be construed so as to do justice." Fed.R.Civ.P. 8(e).  The Court finds that Plaintiffs' complaint fails to provide adequate notice in relation to § 1983 liability to Defendants Mr. Thacker and Ms. Martinez. *See Robbins*, 519 F.3d at 1250.  Indeed, the Court is unable to locate any specific acts by Mr. Thacker or Ms. Martinez that could plausibly give rise to § 1983 liability.  *See Twombly*, 127 S.Ct. at 1965.  Therefore, all § 1983 claims against Mr. Thacker and Ms. Martinez in their individual capacities are dismissed.[2]

To state a claim upon which relief can be granted under § 1983, a plaintiff must allege a

---

[2]Because Plaintiffs have alleged specific factual claims against Mr. Gomez and Ms. Sanchez, these claims must be evaluated in greater detail.

deprivation of a federally protected right. *West*, 487 U.S. at 48.  Plaintiffs allege violations of the following federally protected rights: procedural due process, substantive due process, and equal protection.  The Court will examine each of these claims individually.

A student's entitlement to a public education is a property interest which is protected by the Due Process Clause. *Goss v. Lopez*, 419 U.S. 565, 574 (1975).  The Due Process Clause requires that a student facing temporary suspension of 10 days or less must be given notice and an informal hearing, including an explanation of the evidence the authorities have and an opportunity to present her side of the story. *Id.* at 581.  Plaintiffs assert that DE was afforded the following process in relation to her two day suspension from school: (1) DE was interviewed by Mr. Gomez and/or Ms. Sanchez; (2) Plaintiffs were contacted two hours after the incident and notified that an incident had occurred involving DE; (3) Plaintiffs were notified that they needed to come to the school; (4) Plaintiff Sean E. met with Mr. Gomez, the Assistant Principal, and was informed that DE had gone with a boy to a room, where she was not supervised, and was being suspended for two days for violating school rules that prohibit students from being outside their designated class without supervision (Doc. 23).  The process provided to Plaintiffs, including notice and an informal hearing with the Assistant Principal, was legally sufficient for a two day suspension from school. *See Goss* at 574.  Plaintiffs, therefore, cannot state a § 1983 claim against Mr. Gomez in his individual capacity based on deprivation of procedural due process.  Because the Court is unable to locate any other specific acts by Mr. Gomez that could plausibly give rise to § 1983 liability, all § 1983 claims against Mr. Gomez in his individual capacity are dismissed. *See Twombly*, 127 S.Ct. at 1965.

A student has a constitutional right to freedom from invasion of her personal security through sexual assault by a school official. *See Ingraham v. Wright*, 430 U.S. 651, 673 (1977) (holding that "[a]mong the historic liberties ... protected [by the Due Process Clause] was a right to be free from

... unjustified intrusions on personal security"). Normally, however, state actors are liable only for their own acts, and not the violent acts of third parties. *Liebson v. N.M. Corr. Dep't*, 73 F.3d 274, 276 (10th Cir. 1996). "As a general matter, ... a state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). "Although the Due Process Clause forbids the state itself to deprive individuals of life, liberty, or property without due process of law, its language cannot fairly be extended to impose an affirmative obligation on the state to ensure that those interests do not come to harm through other means." *Id.* at 195. Indeed, the protections of the Due Process Clause are not triggered by mere negligence. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). There are, however, two exceptions to this general rule. First, the special relationship doctrine arises when the state has a custodial relationship with the victim, which triggers an affirmative duty to provide protection to that individual. *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003); *Graham v. Independent Sch. Dist. No. I-89*, 22 F.3d 991, 994-95 (10th Cir. 1994). Second, the danger creation theory provides that a state may also be liable for an individual's safety if it created the danger that harmed the individual. *Christiansen*, 332 F.3d at 1280.

The assumption of an affirmative duty by Ms. Sanchez to protect DE because of her particular vulnerability to harm, pursuant to the written safety plan within her IEP, is an insufficient basis to find a special relationship that would give rise to a cause of action under § 1983. *See Graham*, 22 F.3d at 994-95. A special relationship and the accompanying affirmative duty to protect arises not from the state's knowledge of an individual's predicament or special susceptibility to harm, but from the limitation imposed by the state on an individual's freedom to act. *See DeShaney*, 489 U.S. at 200. Indeed, the basis of a special relationship is that the state has some sort of control or custody over the individual, as in the following cases: prisoners, involuntarily committed mentally

7

ill persons, and foster children. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). The state's duty to protect these categories of persons arises from a special custodial relationship and the control that accompanies it. *See Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1261 (10th Cir. 1998). Compulsory attendance laws for public schools do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school. *Graham*, 22 F.3d at 994-95. School officials, therefore, have no duty under the Due Process Clause to protect students from assaults by other students, even where school officials knew or should have known of the danger presented. *See Seamons v. Snow*, 84 F.3d 1226, 1235 (10th Cir. 1996). Plaintiffs, therefore, cannot state a claim based on a special relationship theory against Ms. Sanchez or the other School Defendants in their individual capacities upon which § 1983 liability can be found.

The Due Process Clause protects against "deliberately wrongful government decisions rather than merely negligent government conduct." *Uhlrig*, 64 F.3d at 573. Thus, under a creation of danger theory, § 1983 liability will not lie absent "an intent to harm" or "an intent to place a person unreasonably at risk of harm." *Id.* A danger creation claim for due process violations under § 1983 must meet the following six-part test: (1) the state and individual actors must have created the danger or increased plaintiff's vulnerability to the danger; (2) the plaintiff must be a member of a limited and specifically definable group; (3) the defendant's conduct must put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk must be obvious and known; (5) defendant must have acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, must shock the conscience. *Rost ex rel. K.C. v. Steamboat Springs RE-2 School Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008).

The Tenth Circuit has focused on the deliberateness of the conduct at issue. *Christiansen*, 332 F.3d at 1281. The defendant must recognize the unreasonable risk and actually intend to expose

the plaintiff to such risks without regard to the consequences to the plaintiff. *Id.* at 573 fn.8. While "an intent to harm" follows the traditional tort law concept of intentionality, the Tenth Circuit has defined "an intent to place a person unreasonably at risk" as when a state actor "was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences." *Medina v. City and County of Denver*, 960 F.2d 1493,1496 (10th Cir. 1992). However, to satisfy the "shock the conscience" standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power; instead, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992). The level of conduct required to satisfy this additional requirement cannot precisely be defined, but the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort and that merely allowing unreasonable risks to persist is not necessarily conscience shocking. *See Id.*

In this case, Plaintiffs' allege Ms. Sanchez was told by DE, one of her special education students, that Defendant LN, a student aide under her supervision, had made sexual advances toward her (Doc. 23). Ms. Sanchez carelessly failed to investigate the matter, but did provide written notice to the Plaintiffs that DE had lied to her (Doc. 23). In her written notice to Plaintiffs, Ms. Sanchez indicated that DE told her that Defendant LN had said to DE that she "would have his baby" (Doc. 23). While Ms. Sanchez's alleged failure to believe DE or investigate her claims may represent irresponsible negligence, her written notice to Plaintiffs–informing them of DE's specific allegations and her judgment that DE had lied–does not manifest an intent to place DE unreasonably at risk. *See Medina*, 960 F.2d at 1496; *see also Collins*, 503 U.S. at 128. The written notice provided Plaintiffs

with an opportunity to follow up with Ms. Sanchez or investigate the matter more fully themselves. Ms. Sanchez's response to DE's allegations may have been callous, one-sided, and potentially dangerous, but it does not rise to the level of outrageousness required to shock the conscience, in a constitutional sense. *See Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (noting that the constitutional concept of conscience shocking has a higher threshold than any traditional category of common law fault). Plaintiffs, therefore, have failed to state a claim based on a deprivation of substantive due process against Ms. Sanchez in her individual capacity upon which § 1983 liability can plausibly be found.

Sexual harassment by a state actor can constitute a violation of the equal protection clause. *Murrell v. School District No. 1, Denver, Colorado*, 186 F.3d 1238, 1249 (10th Cir. 1999). The sexual advances and sexual assault alleged in this case are cognizable under the rubric of sexual harassment. *See Id.* at 1243-44. A state official's failure to reasonably respond to known sexual harassing conduct by a state or non-state actor can be actionable under § 1983. *Murrell*, 186 F.3d at 1250 fn.7. Indeed, the possibility of state action exists where "a supervisor or employer participates in or consciously acquiesces in sexual harassment by an outside third party or by co-workers." *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992). However, Ms. Sanchez, Defendant LN's supervisor at the school, can only be found liable under § 1983 if she consciously acquiesced in his deliberate deprivation of DE's equal protection rights. *Murrell*, 186 F.3d at 1250-51. Indeed, § 1983 liability must be predicated on more than mere negligence. *Id.* at 1399. Plaintiffs must provide factual allegations that plausibly suggest Ms. Sanchez was deliberately indifferent to known sexual harassment in order to state a § 1983 claim, based on a deprivation of equal protection, upon which relief can be granted.

Ms. Sanchez failed to investigate DE's allegations that Defendant LN had made

10

inappropriate sexual advances toward her, but did provide written notice to Plaintiffs of DE's allegations (Doc. 23).   The written notice was sufficient to inform Plaintiffs of the alleged inappropriate sexual advances and let them know that Ms. Sanchez did not believe DE's allegations (Doc. 23).   While Ms. Sanchez's alleged failure to believe, investigate, or take remedial action may represent callous negligence, her efforts to inform Plaintiffs of DE's allegations–including the DE's specific allegations and the fact that she did not believe DE–provided Plaintiffs with an opportunity to follow up with Ms. Sanchez or school administrators if Plaintiffs found her response to be inadequate.   Although it may have been callously irresponsible, Ms. Sanchez's response to DE's allegations cannot plausibly be characterized as a manifestation of deliberate indifference. Plaintiffs, therefore, have failed to state a claim based on a deprivation of substantive due process against Ms. Sanchez in her individual capacity upon which § 1983 liability can be found.   Because the Court is unable to locate any other specific acts by Ms. Sanchez that could plausibly give rise to § 1983 liability, all § 1983 claims against Ms. Sanchez in her individual capacity are dismissed. *See Twombly*, 127 S.Ct. at 1965.[3]

A municipality, in this case Defendant LCPS, can be found liable under § 1983 only where

---

[3]Although it is unnecessary for the Court to examine the School Defendants' various claims to qualified immunity, their conduct, in relation to Plaintiffs' § 1983 claims, did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Indeed, the School Defendants could have reasonably believed, in light of clearly established law, that their conduct, in relation to Plaintiffs' § 1983 claims, comported with established legal standards. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  Therefore, if Plaintiffs' § 1983 claims against the School Defendants were not dismissed for failure to state a claim upon which relief could be granted, they would be dismissed because, with regard to Plaintiffs' § 1983 claims, Mr. Thacker, Mr. Gomez, Ms. Sanchez, and Ms. Martinez are entitled to qualified immunity. *See Harlow*, 457 U.S. at 818; *see also Anderson*, 483 U.S. at 641.

the municipality itself causes the constitutional violation at issue.[4] *Monell v. New York City Dept. Of Social Services*, 436 U.S. 658, 694 (1978). Respondeat superior or vicarious liability will not attach under § 1983. *Id.* It is only when the execution of a municipal government's policy or custom inflicts the injury that the municipality may be held liable under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). The "official policy" requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Indeed, a municipality is liable only when the official policy is the "moving force" behind the injury alleged. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). A municipality's failure to train its employees or agents can constitute a "policy or custom" and may serve as a basis for § 1983 liability where (1) the failure to train amounts to "deliberate indifference" to the rights of the municipality's inhabitants, and (2) the failure to train is closely related to the ultimate injury. *City of Canton*, 489 U.S. at 389-91. Deliberate indifference is an objective standard which is satisfied if "the risk is so obvious that the official should have known of it." *Barney*, 143 F.3d at 1307 fn.5. The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. *See Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 409-10 (1997) (finding that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action"). In most instances,

---

[4]Plaintiffs' claims against Mr. Thacker, Mr. Gomez, Ms. Sanchez, and Ms. Martinez in their official capacities are treated as claims against the entity of which they are agents, in this case Defendant LCPS. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

deliberate indifference must be established through the existence of a pattern of tortious conduct. *Barney*, 143 F.3d at 1307.  In a "narrow range of circumstances," however, deliberate indifference may be found absent a patter of unconstitutional behavior if a violation of a federal right is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations. *Id.* at 1307-08.

Plaintiffs allege that LCPS failed to develop and implement adequate training programs for student aides assigned to work with special education students and special education teachers who employ student aides (Doc. 23).  Plaintiffs further allege that LCPS's failure to train constituted deliberate indifference and is closely related to Defendant LN's sexual assault of DE (Doc. 23). Plaintiffs' allegation that Ms. Sanchez indicated that DE told her that Defendant LN had said to DE that she "would have his baby" or that Defendant LN referred to female students in the special education class as his "girlfriends" are insufficient to provide LCPS notice of a pattern of constitutional violations. *See Jojola v. Chavez*, 55 F.3d 488, 490-91 (10th Cir. 1995) (failing to find a pattern of sexual abuse necessary to provide the municipality with notice when a janitor had committed four incidents of sexual misconduct directed at students that had been reported to school officials).  It cannot be said that LCPS's failure to provide adequate training enhanced the risk that a student aide would sexually assault a special education student to a level of substantial certainty. *See Board of County Com'rs of Bryan County*, 520 U.S. at 409-10.  Defendant LN's sexual assault of DE cannot fairly be attributed to LCPS's failure to provide adequate training to student aides or special education teachers. *See City of Canton*, 489 U.S. at 385.  Plaintiffs' § 1983 claim against LCPS for municipality liability, therefore, must be dismissed for failure to state a claim upon which relief can be granted.

13

**B.  Individuals with Disabilities Education Act Claims.**

In 1975, Congress enacted the Education of the Handicapped Act (hereinafter "EHA"). Congress changed the name of the EHA to the IDEA in 1990.[5]  The IDEA guarantees that children with disabilities have access to "a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C.§ 1400(d).  To meet this goal, the IDEA provides federal funding to state and local agencies and requires them to provide each child with an IEP. *See Padilla ex rel. Padilla v. School Dist. No. 1 in City and County of Denver, Colo.*, 233 F.3d 1268 (10th Cir. 2000).  An IEP is a written statement that includes such matters as the child's level of education performance, annual goals, services to be provided to the child and the like. 20 U.S.C. 1414(d).  A school district satisfies its obligation to provide free access to a public education by providing personalized instruction with sufficient support services to permit a disabled child to benefit educationally from that instruction. *Moseley v. Board of Education of Albuquerque Public Schools*, 483 F.3d 689, 690 (10th Cir. 2007).

The IDEA requires that a plaintiff exhaust administrative remedies available under the Act, if the alleged injuries could be redressed to any degree by the IDEA's administrative procedures and remedies. *Padilla*, 233 F.3d at 1274.  Where the plaintiff is seeking only monetary damages for alleged physical abuse and injury, the IDEA's administrative remedies, oriented as they are toward providing prospective education benefits, are insufficient, and exhaustion of administrative procedures, therefore, is unnecessary. *See Id.* at 1274-75.

In 1984 the Supreme Court concluded that the EHA provided a comprehensive enforcement scheme that preempted other overlapping but independent statutory or constitutional causes of action

---

[5]EHA and IDEA are used interchangeably throughout this Memorandum Opinion and Order.

related to a publicly financed special education. *See Smith v. Robinson*, 468 U.S. 992, 1013 (1984). In response to the Supreme Court's decision in *Smith*, Congress amended the EHA in 1986, adding 20 U.S.C. § 1415(f), now 20 U.S.C. § 1415(l), which states in pertinent part: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution ... or other Federal statutes protecting the rights of handicapped children and youth." This amendment makes it clear that the EHA is not the exclusive remedy available to handicapped students seeking public educational benefits. *Hayes v. Unified School Dist. No. 377*, 877 F.2d 809, 812 (10th Cir. 1989).

The Tenth Circuit has held that, in the absence of a violation of another federally protected right, a violation of the IDEA may not provide the basis for a § 1983 claim. *Padilla*, 233 F.3d at 1268. All of Plaintiffs' § 1983 claims that are based solely on violations of the IDEA, therefore, must be dismissed for failure to state a claim upon which relief can be granted. *Id.*

Plaintiffs' allegation that Defendants violated DE's procedural due process rights guaranteed by the IDEA also fails to state a claim upon which relief can be granted. The Supreme Court has expressly adopted the Department of Education's position that a suspension of up to 10 school days does not amount to a "change of placement" under the IDEA. *Honig v. Doe*, 484 U.S. 305, 326 fn. 8 (1988). DE was only suspended from school for two days (Doc. 23). Therefore, pursuant to the IDEA, no "change of placement" violation occurred, and Plaintiffs' claim that Defendants violated DE's procedural due process rights guaranteed by the IDEA must be dismissed. *Id.*

Plaintiffs allege that at all relevant times to this lawsuit DE had an IEP in place, which included a safety plan intended to address concerns with DE's personal safety (Doc. 23). Under the terms of the safety plan, DE was to be observed at all times and kept in the line of sight of an adult supervisor while on school grounds (Doc. 23). Construing the pleading "so as to do justice,"

15

Plaintiffs seek monetary damages for denial of a free and appropriate education under the IDEA based on LCPS's failure to conform with the safety provisions of DE's IEP (Doc. 23). Fed.R.Civ.P. 8(e).  Because Plaintiffs seeks only monetary damages, exhaustion of IDEA administrative remedies is unnecessary. *Padilla*, 233 F.3d at 1274-75.  The Tenth Circuit has not specifically addressed the question of whether damages are available under the IDEA. *Id.* at 1274.  The Supreme Court, however, has interpreted the IDEA as bestowing broad discretion on the courts to grant such relief as they determine is appropriate. *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.*, 471 U.S. 359, 369-70 (1985) (interpreting 20 U.S.C. § 1415(e)(2), now 20 U.S.C. § 1415(l)(2)).  This Court, therefore, finds that Plaintiffs have stated a claim under the IDEA against LCPS for damages resulting from LCPS's failure to conform with the safety provisions of DE's IEP.

### C.  Civil Conspiracy Claim.

A civil conspiracy is a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Armijo v. National Surety Corporation*, 58 N.M. 166, 178, 268 P.2d 339, 346-47 (N.M. 1954).  In New Mexico, civil conspiracy, unlike criminal conspiracy, is not of itself actionable; instead, the purpose of a civil conspiracy claim is to make all members of the conspiracy jointly and severally liable for torts arising out of the conspiracy.  *Seeds v. Lucero*, 137 N.M. 589, 592, 113 P.3d 859, 862 (N.M. App. 2005).  "Generally, to state a cause of action for conspiracy, the complaint must allege: (1) the existence of the conspiracy; (2) the wrongful act or acts done pursuant to the conspiracy; and (3) the damage resulting from such act or acts." *Las Luminarias of the New Mexico Council of the Blind v. Isengard*, 92 N.M. 297, 300, 587 P.2d 444, 447 (N.M. App. 1978).

Plaintiffs allege that Mr. Thacker, Mr. Gomez, Ms. Sanchez, and Ms. Martinez formed a conspiracy for the unlawful purpose of concealing from Plaintiffs and the Las Cruces Police

Department the fact that a sexual assault had occurred on school property (Doc. 23).  Plaintiffs, however, failed to make factual allegations that could plausibly form the basis for tort damages arising out of this alleged conspiracy. *See Armijo*, 58 N.M. at 178, 268 P.2d at 347 (noting that "unless a civil action in damages would lie against one of the conspirators, if the act was done by him alone, it will not lie against many acting in concert").  Plaintiffs assert that the purpose of the conspiracy of silence was to prevent knowledge of a sexual assault from reaching either Plaintiffs or the Las Cruces Police Department (Doc. 23).  According to the Amended Complaint, however, Plaintiffs learned of the alleged sexual assault and contacted the Las Cruces Police Department on May 19, 2006, the same day the sexual assault occurred (Doc. 23).  Furthermore, the alleged conspiracy had no impact on the procedural due process afforded to DE.  Indeed, Plaintiff Sean E. had a legally sufficient opportunity during his informal hearing with Mr. Gomez to object to DE's two day suspension from school for being outside her designated class without supervision (Doc. 23). *See Goss*, 419 U.S. at 574.  Intent to harm, without actual harm arising out of the conspiracy, is an insufficient basis for a civil conspiracy claim. *See Las Luminarias of the New Mexico Council of the Blind*, 92 N.M. at 300, 587 P.2d at 447.  Plaintiffs, therefore, have failed to state a claim of civil conspiracy upon which relief can be granted.

### D.  Spoliation of Evidence Claim.

New Mexico recognizes a cause of action for intentional spoliation of evidence. *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 649, 905 P.2d 185, 189 (N.M. 1995), *overruled on other grounds*, *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. 272, 34 P.3d 1148 (N.M. 2001).  The tort is defined as "the intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action." *Id.*  The elements of intentional spoliation of evidence are: "(1) the existence of a potential lawsuit; (2) the defendant's

knowledge of the potential lawsuit; (3) the destruction, mutilation, or significant alteration of potential evidence; (4) intent on part of the defendant to disrupt or defeat the lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages." *Id.* On May 1, 2006, Plaintiffs reviewed documents and found that Ms. Sanchez had disciplined DE for repeating statements made by Defendant LN regarding his intent to have inappropriate sexual contact with DE in the future (Doc. 23). Plaintiffs allege that after the incident which forms the basis of this litigation–a period of time in which the existence of a potential lawsuit was evident–the School Defendants disposed of, destroyed, or significantly altered these documents with the intent to disrupting Plaintiffs' ability to prosecute their claims (Doc. 23). Plaintiffs allege that the documents in question provide the factual basis for Plaintiffs' negligence and § 1983 claims, and the destruction or alteration of these documents could undermine Plaintiffs' case (Doc. 23). Plaintiffs, therefore, have stated a prima facie claim against Mr. Thacker, Mr. Gomez, Ms. Sanchez, and Ms. Martinez for intentional spoliation of evidence. *See Id.*

Defendants, however, argue that Plaintiffs' cause of action for intention spoliation of evidence is barred by the doctrine of sovereign immunity (Doc. 46). The doctrine of sovereign immunity bars suits against the State of New Mexico and its agencies, unless the state has waived its immunity. *See Alden v. Maine*, 527 U.S. 706, 712-13 (1999). Under the Tort Claims Act, "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived" by provisions of the Act. N.M. Stat. § 41-4-4(A) (1978). All of Plaintiffs' claims under the Tort Claims Act are based on specific waivers of immunity for "operation and maintenance" of public buildings. N.M. Stat. § 41-4-6 (1978). This waiver applies to more than the operation or maintenance of the physical aspects of the building, and includes safety policies necessary to protect the people who use the building. *Upton v. Clovis*

18

*Municipal School District*, 140 N.M. 205, 207, 141 P.3d 1259, 1262 (N.M. 2006).  Although §
41-4-6 has been interpreted broadly, extending this waiver of immunity to cover the maintenance
of school records is outside the spectrum of reasonable statutory construction.  Plaintiffs' intentional
spoliation of evidence claim, therefore, is barred, pursuant to the doctrine of sovereign immunity,
as long as the School Defendants were acting within the scope of their duties.

Plaintiffs seek to preserve their intentional spoliation of evidence claim by arguing that the
School Defendants are not entitled to immunity because they were acting outside the scope of their
duties when they destroyed or altered the school documents.  "Scope of duty" is defined in the Tort
Claims Act as "any duties that a public employee is requested, required or authorized to perform by
the governmental entity, regardless of the time and place of performance." N.M. Stat. § 41-4-6(G).
The Supreme Court of New Mexico has interpreted "scope of duty," within the context of the Tort
Claims Act, to include abuses of official power, even to the extent of tortious acts, fraudulent
conduct, acts of intentional malice, and criminal activity. *See Celaya v. Hall*, 135 N.M. 115, 121,
85 P.3d 239, 245 (N.M. 2004); *see also Garcia-Montoya v. State Treasurer's Office*, 130 N.M. 25,
43, 16 P.3d 1084, 1102 (N.M. 2001).  Although the issue of whether an employee is acting within
the scope of their duties is ultimately a question of fact, the Court is required to look for plausibility
in the complaint. *Twombly*, 127 S.Ct. at 1965; *Celaya*, 135 N.M. at 122, 85 P.3d. at 246.  A claim
that the alteration or destruction of a school record could be outside the scope of duties of the School
Defendants–which includes the principal and vice principal of the school at which the record was
created and kept and the special education teacher who originally created the record in question–is
simply too speculative to form the basis of a claim for relief. *See Twombly*, 127 S.Ct. at 1965; *see
also Celaya*, 135 N.M. at 121, 85 P.3d at 245.  Plaintiffs' intentional spoliation of evidence claim,
therefore, is barred by the doctrine of sovereign immunity. *See Alden*, 527 U.S. at 712-13.

### E.  Intentional Infliction of Emotional Distress Claims.

New Mexico has recognized the tort of intentional infliction of emotional distress. *Mantz v. Follingstad*, 84 N.M. 473, 479-80, 505 P.2d 68, 74-75 (N.M. App. 1972).  Under New Mexico common law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Dominguez v. Stone*, 97 N.M. 211, 214, 638 P.2d 423, 426 (N.M. App. 1981).  Liability for intentional infliction of emotional distress can only be found where the conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*  Defendant LN's alleged conduct in sexually assaulting DE, a special education student, may be sufficiently outrageous to form the basis for a prima facie claim of intentional infliction of emotional distress against him, but Plaintiffs have not alleged any facts that could plausibly give rise to a claim for intentional infliction of emotional distress against the School Defendants (Doc. 23).  *See Dominguez*, 97 N.M. at 214, 638 P.2d at 426; *see also Twombly*, 127 S.Ct. at 1965.  Indeed, Plaintiffs' factual allegations against the School Defendants sound in negligence and do not rise to the level of outrageousness required for the tort of intentional infliction of emotional distress. *See Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.*, 131 N.M. 607, 616, 41 P.3d 333, 342 (N.M. 2001).  Plaintiffs' claims against the School Defendants for intentional infliction of emotional distress, therefore, must be dismissed for failure to state a claim upon which relief can be granted.

### F.  Prima Facie Tort Claims.

New Mexico has recognized prima facie tort as a cause of action that would "allow a plaintiff to recover for intentionally committed acts that, although otherwise lawful, are committed with the

intent to injure." *Schmitz v. Smentowski*, 109 N.M. 386, 395, 785 P.2d 726, 735 (N.M. 1990). The allegations Plaintiffs put forward in support of their prima facie tort claim essentially state that Defendants LCPS, Mr. Thacker, Mr. Gomez, and "the superintendent" failed to protect DE from Defendant LN and that their unjustifiable failure to act caused harm (Doc. 23). These allegations are unrelated to the elements of a prima facie tort claim–an intentional act that is lawful but committed with an intent to injure–and insufficient to state a claim for prima facie tort upon which relief can be granted. *Schmitz*, 109 N.M. at 395, 785 P.2d at 735. In addition, "[p]rima facie tort is not included in the specific provisions of the Tort Claims Act" and, therefore, Defendants LCPS, Mr. Thacker, Mr. Gomez, and "the superintendent" enjoy immunity from Plaintiffs' claim. *Derringer v. State*, 133 N.M. 721, 725, 68 P.3d 961, 965 (N.M. App. 2003). Plaintiffs' argument that these Defendants were somehow acting outside the scope of their duties in failing to protect one of their students is a non sequitur. Plaintiffs' claims for prima facie tort, therefore, must be dismissed for failure to state a claim upon which relief can be granted.

**IV.    Conclusion.**

Plaintiffs have adequately stated a claim under the IDEA against LCPS for damages caused by the school district's failure to implement the safety provisions of DE's IEP. All other claims falling under Counts II, III, IV, V, VII, and VIII against LCPS or the School Defendants–Mr. Gomez, Mr. Thacker, Ms. Sanchez, and Ms. Martinez–must be dismissed for failure to state a claim upon which relief can be granted. All claims against "the superintendent" also must be dismissed for failure to state a claim upon which relief can be granted. Plaintiffs retain all claims against LCPS and the School Defendants that fall under Count I. Plaintiffs also retain all claims against Defendant LN and Defendants David and Maggie Fraga.

**WHEREFORE,**

**IT IS ORDERED** that as described herein Defendant LCPS and the School Defendants'

Partial Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**